UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLA M. BRUEMMER and
DESIGN EVOLUTIONS, INC.,

       Plaintiff,

v.

MICHAEL REARDON, et al.,

       Defendants.

_____/

File No.  1:11-CV-988

HON. ROBERT HOLMES BELL

## O P I N I O N

This copyright infringement action was filed by Marla M. Bruemmer and Design Evolutions, Inc. against Michael and Laurie Reardon, Tom Scott d/b/a T.A. Scott Construction, Inc., and Don Chapman. Defendants Michael and Laurie Reardon have been dismissed on stipulation of the parties. (Dkt. No. 62.) This matter is currently before the Court on Defendants Scott and Chapman's motion for summary judgment (Dkt. No. 49), and on Plaintiffs' motion to file additional deposition testimony in opposition to Defendants' motion for summary judgment (Dkt. No. 59). For the reasons that follow, both motions will be denied.

### I.

Bruemmer performs design work for custom residential homes through her business, Design Evolutions, Inc. In the spring of 2010, Michael and Laurie Reardon hired Bruemmer

to develop a design for a residential home at 9046 East Shore Drive, on Austin Lake in the City of Portage, Michigan. On April 29, 2010, Bruemmer presented the Reardons with four schematic house drawings: a front exterior elevation, a rear exterior elevation, a first floor plan, and a second floor plan. The Reardons compensated Bruemmer for the drawings. Bruemmer applied for copyright protection of the drawings in September 2010.

In October 2010, the Reardons met with Chapman to discuss designing their house on Austin Lake. (Chapman Aff. ¶ 2.) Chapman and Scott had a prior relationship with the Reardons because Chapman designed the home that Scott built for them in 2005. (Chapman Aff. ¶ 3.) The Reardons advised that they had two other designers do preliminary work, but that their work had been unsatisfactory. The Reardons showed Chapman the sketches created by Bruemmer and advised Chapman that Bruemmer's sketches were based on other sketches created by Michael Dunne. (Chapman Aff. ¶ 5.) Bruemmer's sketches did not have overall dimensions, window sizes or types, and did not specify structural or finish materials. The only specifications were room sizes. (Chapman Aff. ¶ 6.) In October 2010, the Reardons contracted with T.A. Scott to construct the house designed by Chapman.

Plaintiffs filed this action, alleging that Defendants Chapman and Scott utilized Plaintiff's copyrighted materials and intellectual property to design and erect a residential dwelling for the Reardons at 9046 E. Shore Drive, Portage, Michigan.

## II.

Defendants filed their motion for summary judgment on May 25, 2012. Plaintiffs

2

timely filed a brief in opposition on June 22, 2012. On August 21, 2012, Plaintiffs attempted to file supplemental documentary evidence in opposition to the motion. (Dkt. No. 57.) The Court rejected the supplemental materials without prejudice because they were filed outside of the time period for responding to dispositive motions and without leave to do so. (Dkt. No. 58.) On September 4, 2012, Plaintiffs filed a motion to extend scheduled deadlines and to accept additional deposition testimony in opposition to Defendants' motion for summary judgment. (Dkt. No. 59.)

The evidence Plaintiffs seek to present includes answers to interrogatories and the deposition testimony of Michael and Lori Reardon. The interrogatories were in Plaintiffs' possession before they filed their response to Defendants' motion for summary judgment. The interrogatories are not new evidence, and Plaintiffs have not shown cause why they delayed presenting this information to the Court.

Unlike the interrogatories, the Reardons' depositions were not available when Plaintiffs filed their response to the motion for summary judgment. Plaintiffs did not schedule these depositions until after they responded to the motion for summary judgment, and they did not file a Rule 56(d) affidavit requesting that the Court defer considering the motion for summary judgment. Although Plaintiffs contend that the depositions are relevant to Defendants' assertion that Plaintiffs failed to show direct evidence of copying or substantial similarity, Plaintiffs have not specified which portions of the depositions support their opposition to Defendants' motion. A party opposing summary judgment is required

3

to "point to" evidence creating a genuine issue of fact. *Wimbush v. Wyeth*, 619 F.3d 632, 638 (6th Cir. 2010). It is not the district court's duty "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at n.4 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d at 1480-81). Because Plaintiffs have not specified the portions of the depositions that support their opposition to Defendants' motion, the Court will deny their motion to accept additional deposition testimony.

### III.

Although Defendants bring this motion for summary judgment pursuant to Rule 56, they have also include an argument for dismissal of Plaintiffs' complaint for failure to state a claim on which relief can be granted. Defendants contend that Plaintiffs have not pleaded copyright infringement with sufficient particularity to give notice of the claim against them.

In reviewing Defendants' motion, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The elements of a copyright infringement claim are "(1) ownership of a valid

4

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). The Sixth Circuit has noted that, because copyright infringement lends itself readily to abusive litigation, "greater particularity in pleading, through showing 'plausible grounds,' is required." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008). In *National Business Development Services*, the Sixth Circuit affirmed dismissal of a copyright infringement complaint where there was no identification of a work produced by the defendants that infringed upon the plaintiff's copyrighted work, nor a description of the manner in which the defendants' works infringed upon the plaintiff's work. 299 F. App'x at 512. The Court stated: "[T]he Court is not required to accept Plaintiff's bare legal conclusions. Plaintiff's complaint amounts to no more than a speculative claim that Defendants may have produced some work that in some way infringed upon Plaintiff's works. This pleading is insufficient, and Plaintiff's action must be dismissed." *Id.*

Plaintiffs in the case before this Court have alleged more than bare legal conclusions. Plaintiffs have alleged that Bruemmer is the owner of a valid copyright in her April 29, 2010, drawings for the Reardons' proposed residence, and that Defendants infringed on that copyright by using Bruemmer's copyrighted drawings for the design and construction of the Reardons' residence.

Defendants contend that Plaintiffs have nevertheless failed to adequately allege the manner in which their work infringed because they have not alleged which constituent

5

elements of the work are original.

The requirement that a pleading contain "plausible grounds" for relief "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. Plaintiffs' complaint contains sufficient factual matter to state a claim to relief that is plausible on its face. Accordingly, Defendants' motion to dismiss the complaint for failure to state a claim will be denied.

**IV.**

Defendants move for summary judgment based on their contentions that Plaintiffs' design was derivative of Defendants' designs, Plaintiffs' design does not contain any original copyrightable elements, and Defendants' design was not substantially similar to Plaintiffs' design.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

6

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

As previously noted, the elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,* 499 U.S. at 361. There is no dispute that Bruemmer owns a copyright in the drawings.[1] For purposes of their summary judgment motion, Defendants focus on the second element. They contend that Plaintiffs cannot establish copying of constituent elements that are original.

"'Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Tiseo Architects, Inc. v. B & B Pools Serv. & Supply Co.*, 495 F.3d 344, 347 (6th Cir. 2007)

---

[1]To the extent Defendants contend that the copyright is not valid because it does not cover any original work, the issue will be discussed in conjunction with the issue of original copyrightable elements in § V(A) below.

(quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004)); *see also Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp*., 361 F.3d 312, 316 (6th Cir. 2004) ("[C]opying is an essential element of infringement and substantial similarity between the plaintiff's and defendants' works is an essential element of copying."). "Access is essentially 'hearing or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy.'" *Stromback*, 384 F.3d at 293 (quoting *Ellis*, 177 F.3d at 506). Defendants have admitted access, albeit slight, to Bruemmer's drawings prior to working on the Reardon home.[2] (Def. Br. 10). Because access is admitted, the only disputed matter before the Court is the issue of substantial similarity.

We apply a two-step analysis in determining substantial similarity: "[T]he first step requires identifying which aspects of the artist's work, if any, are protectible by copyright, [and] the second involves determining whether the allegedly infringing work is substantially similar to protectible elements of the artist's work.'" *Stromback*, 384 F.3d at 294 (quoting *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003)) (internal quotations omitted).

## A. Original copyrightable elements/derivative

The essence of the first step – identifying which aspects of the artist's work, if any, are protectable by copyright – "is to filter out the unoriginal, unprotectible elements –

---

[2]Chapman stated that he was shown sketches done by Bruemer, but that, as he prepared his preliminary plan, he did "not copy, refer to, or reinterpret any of the work Ms. Bruemmer did. The sketch she had supplied to the Reardons was not in my possession during my renderings[.]" (Chapman Aff. ¶¶ 5, 11.)

elements that were not independently created by the inventor, and that possess no minimal degree of creativity – through a variety of analyses.'" *Tiseo Architects*, 495 F.3d at 348 (quoting *Kohus*, 328 F.3d at 855). "To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns*, 499 U.S. at 345. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possess at least some minimal degree of creativity." *Id.* (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990) (hereinafter Nimmer)). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (quoting Nimmer at § 1.08 [C][1]).

Defendants contend that Bruemmer's drawings do not contain any original copyrightable elements.[3] First, Defendants contend that Bruemmer's design is derivative

---

[3]Defendants point out in the factual background section of their brief that Plaintiffs' freehand sketches were far from technical drawings. Although they noted room sizes, they did not identify overall dimensions, window sizes, window types, or structural materials. In addition, the drawings were unbuildable as drawn because of discrepancies in the roofline. (Dkt. No. 49, Defs. Br. 5-6.) The preliminary nature of Bruemmer's drawings does not necessarily render them unprotectable by copyright. *See Frank Betz Assocs., Inc. v. J.O. Clark Constr., L.L.C.*, No. 3:08-CV-00159, 2010 WL 2253541, at *14 (M.D. Tenn. May 30, 2010) (citing cases in support of the proposition that copyright infringement can be based on newspaper advertisements, sales brochures, and other abbreviated drawings as well as technical blueprint drawings); *see also Robert R. Jones Assocs., Inc., v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988) (holding that access to copyrighted work could be based on abridged floor plans in a promotional brochure).

because it bears a striking resemblance to Chapman's plan for the Reardon's home built in 2005, to Chapman's 2010 Kalamazoo Parade of Homes design, and to Chapman's 2008 Parade House located in the Crane's Pond development. (Chapman Aff. ¶¶ 8, 15.) Defendants have presented the affidavit of their expert, Lee A. Martin, AIA, that the Chapman 2005 design and the Bruemmer 2010 design are "substantially similar." (Martin Aff. ¶ 18.)[4] In response, Plaintiffs deny that the Bruemmer designs are derivative. Bruemmer states in her affidavit that the Reardons never showed her any plans, pictures, or designs of their previous home, that she never reviewed prior work by Chapman, and that "[t]he designs for the Reardon home are my independent, creative work product and are not derived or based on prior works." (Bruemmer Aff. ¶¶ 4, 6.) In light of the conflicting evidence presented, the Court finds that there is a question of fact as to whether the Bruemmer drawings are derivative.

Second, Defendants contend that Bruemmer's drawings are not original because most of the features are of common usage in the public domain. Mr. Martin opines that the

---

[4]According to Martin:

The Chapman 2005 design, the Bruemmer 2010 design, and the Chapman 2010 design are all substantially similar in many respects, incorporating standard features that are common to all residences of this general style. There are no unique or transformational qualities in the Bruemmer 2010 design included in the Chapman 2010 design. The Reardons, Chapman and Scott did not copy the Bruemmer design.

(Martin Aff. ¶ 23.)

Bruemmer 2010 and the Chapman 2010 plans use standard features frequently found in single-family residential design and construction in the region and throughout the country, and he has further opined that the designs differ significantly with respect to "the arrangement and composition of spaces and elements in the design."  (Martin Aff. ¶ 14.)

Although individual features in residential designs, are not afforded copyright protection, the particular selection, arrangement, and combination of those elements in one house may be sufficiently original and detailed to be afforded copyright protection.  *See Frank Betz*, 2010 WL 4628203 at *5 (citing cases) ("In the case of more mundane residential designs, it is obvious that the use of porches, porticos, dormers, and bay windows, for example, is not protected, but the particular expression of those ideas, and their combination in one house, may be protected."); *T-Peg, Inc. v. Vt. Timber Works, Inc*., No. 03-CV-462-SM, 2009 WL 839522 at *3 (D. N.H. Mar. 27, 2009) (holding that after filtering out unprotectable architectural elements, "the overall arrangement and composition of spaces and elements" must still be considered); *see also* 17 U.S.C. § 101 ("An 'architectural work' . . . includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.")  Thus, although Bruemmer's use of design features such as square windows, cupolas, stone wainscoting, shake siding, 45 degree angled walls, arches, and vaulted ceilings, may not be protectable, the Court must still consider the overall arrangement and combination of these elements.  The Court cannot say, as a matter of law, that Bruemmer's arrangement and combination of the

11

various elements is not sufficiently original and detailed to be afforded copyright protection.

Third, Defendants contend that Bruemmer's drawings are not original because, given the existing condition and severe restrictions of the building site and the Reardons' very detailed and specific customer preference list, no other basic arrangement of the major sections of the home is possible. (Chapman Aff . ¶¶ 12-14.)

In *Tiseo Architects*, the court found that despite the substantial similarity between two floor plans, there was no copyright infringement because the similarities were explained by factors other than the copying of original elements. *Tiseo Architects*, 495 F.3d at 347. The court explained that "both drawings were based on [the client's] original sketches, that both incorporated [the client's] suggestions for various features of the floor plan, and that the options for how to design the addition 'were extremely limited' by zoning requirements and the presence of a load-bearing wall that the plans had to accommodate." *Id.* at 347.

Although some of the design elements were undoubtedly governed by the Reardons' preferences, the size of the building site, the orientation to the lake, and the presence of a driveway, the Court cannot determine, as a matter of law, the extent to which these factors account for the degree of similarity between Bruemmer's drawings and Defendants' work.

The Court concludes that there are questions of fact for trial as to which aspects of Bruemmer's drawings are protectable by copyright

**B. Substantial Similarity**

The second step of the substantial similarity analysis involves determining whether

the allegedly infringing work is substantially similar to protectable elements of the artist's work. This step asks "whether the ordinary, reasonable observer would find the works, taken as a whole, to be substantially similar." *Stromback*, 384 F.3d at 294 (citing *Murray Hill*, 361 F.3d at 318). "The substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their 'overall look and feel.'" *Sturdza v. U.A.E.*, 281 F.3d 1287, 1296 (D.C. Cir. 2002) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001)). While this question ordinarily presents an issue of fact for trial, in an appropriate case a court may find, as a matter of law, that a trier of fact would not be permitted to find substantial similarity. *Id.*

Defendants have presented evidence regarding the numerous ways in which the Bruemmer 2010 and Chapman 2010 plans differ. (Chapman Aff. ¶ 20.) Defendants' expert Martin has summarized the differences between the Bruemmer 2010 plan and the Chapman 2010 plan as follows:

> Exterior elevations of Bruemmer 2010 and Chapman 2010 differ in roof configuration, materials (i.e., stucco versus wood shingles except in gable roof areas), and arrangement of garage doors. The first floor plans differ in entrance foyer configuration; kitchen/dining room configuration; the relationship of the Sun Room to Laundry and Pantry; and exterior door features. Differences in second floor plans include a loft and bonus space in the Chapman design not present in the Bruemmer design, and a straight run stairway rather than a 90 degree turn stairway in the Chapman design.

(Martin Aff. ¶ 15.) Defendants' other expert, Richard B. Cook, FAIA, has similarly concluded that Chapman's design is not derivative of Bruemmer's design:

> Rather they came through with the standard vocabulary that an architect uses

13

when doing a single family house.  The floor plans of the two houses are different, the roof lines are different.   The placement of the various rooms is arranged in different ways.  The flow from room to room is different.  The stair placement to the second floor works well architecturally in the Chapman house.

(Cook Aff. ¶ 6.)  Defendants contend that in light of the laundry list of differences they have identified, no reasonable jury could possibly find the two designs to be substantially similar.

In response to Defendants' motion, Plaintiffs have prepared a series of plans and transparencies overlaying Bruemmer's drawings onto the designs Defendants submitted to the City of Portage in support of their request for a building permit for the Reardon house.  According to Bruemmer, the plans and transparencies "are an accurate depiction to scale of my designs in transparency and the plans filed with the City of Portage for the Reardon home."  (Bruemmer Aff. ¶ 9.)

Although Defendants have presented evidence of differences between their plans and Bruemmer's drawings, Plaintiffs' exhibits reveal similarities in the footprint, the rooflines, and the room layouts.  The outlines of the two designs are identical in many respects.  The similarities are sufficient to enable an ordinary, reasonable observer to find that the overall look and feel of the works is substantially similar.  *See T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 113-14 (1st Cir. 2006) (holding that district court erred in focusing on differences and in failing to consider those similarities that went to the "overall form" of the building as well as the "arrangement and composition of spaces and elements"); *Sturdza*, 281 F.3d at 1299 (holding that despite differences between the two designs, they were

14

"sufficiently similar with respect to both individual elements and overall look and feel for a reasonable jury to conclude that the two are substantially similar"). The Court accordingly concludes that there is an issue of fact for trial as to substantial similarity.

An order consistent with this opinion will be entered.


Dated: November 29, 2012                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE